IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

JAMES JOHNSON,

    Plaintiff,

v.                                                                                                   No. 14-1020

COX OIL COMPANY, INC.,

    Defendant.
_____

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
_____

On January 28, 2014, Plaintiff, James Johnson, brought this action against Defendant, Cox Oil Company, Inc. ("Cox Oil"), claiming that he was discriminated against on the basis of his race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, *et seq.*, and the Tennessee Human Rights Act (the "THRA"), Tenn. Code Ann. § 4-21-101, *et seq.* (Docket Entry ("D.E.") 1.) Before the Court is Defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (D.E. 24.) Plaintiff has responded to the motion, (D.E. 26), and Defendant has filed a reply, (D.E. 28), making the matter ripe for disposition. For the reasons discussed below, the motion is GRANTED.

**I.**     **Background**

The following facts are undisputed unless otherwise noted. In March 2008, Cox Oil hired Johnson to work at one of its convenience stores, Little General Store Number 28 in Sharon, Tennessee, and promoted him to the position of "Assistant Manager" in November 2008. (Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts ¶ 1, D.E. 27; Def.'s Resps. and Objections to Pl.'s First Set of Interrogs. ¶ 8, D.E. 27-1.) The next year, Plaintiff transferred to

Little General Store Number 55 ("Store 55"), located in Union City, Tennessee. (Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts ¶ 2, D.E. 27.) During 2011 and 2012, Johnson spent six months working at a Maverick Quick Shop owned by Defendant, where he was managed by Dustin McBride. (*Id.* ¶ 3; McBride Dep. at 26, D.E. 25-3.)[1] He eventually transferred back to Store 55. (Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts ¶ 3, D.E. 27.) According to Johnson, he specifically sought to work for McBride in an attempt to receive training and the opportunity to move up in the company, but he later requested to move back to Store 55 after McBride repeatedly wrote him up. (*See* Pl.'s Dep. 33–36, D.E. 27-2.) Johnson testified in his deposition that McBride required him, on one occasion, to come in at 6:00 AM to compile a report after closing the store the previous night, which other managers had never expected him to do. (*See id.* at 46.) Later in 2012, Plaintiff began working at Little General Store Number 8 ("Store 8"), located in Union City, to temporarily replace Store 8's General Manager, Delakeenah Anderson, who was unable to work for medical reasons. (Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts ¶¶ 4–5, 14, D.E. 27.) Johnson's tenure at Store 8 ended on March 26, 2013, when Anderson received clearance from her doctor to return to work. (*Id.* ¶ 14.)

One of Johnson's duties as an Assistant Manager was to compile a "daily report" consisting of certain sales and inventory numbers. (*Id.* ¶ 9.) As part of the report, he performed so-called "cigarette counts," which required him to "tak[e] the . . . count of cigarette inventory at the beginning of the day, subtract the number of cigarettes sold that day, and determin[e] whether the resulting number equal[ed] the number left in inventory at the end of the day." (*Id.*

---

[1] Although the cover page of McBride's deposition identifies him as "William McBride," the Court follows the parties' convention of referring to him as "Dustin McBride." (*See* McBride Decl. at 1, D.E. 25-1 (identifying the affiant as "Dustin McBride").)

¶ 23.) In his deposition, Plaintiff stated that he spoke to Chad Turnbow, the area supervisor for Store 8, about his cigarette counts shortly before Anderson returned. (Pl.'s Dep. 48–49, 54, D.E. 27-2.) According to Johnson, he told Turnbow that the counts were not adding up properly, and Turnbow replied that he did not have time to investigate the problem but would address the issue later. (*Id.*) Plaintiff's testimony also indicated that Turnbow said he had recently performed an audit of Store 8, so the discrepancies should not have been a problem. (*Id.* at 48–50.)

On March 27, 2013, Anderson compiled her first daily report after having returned to work, and it indicated that eighty packs of cigarettes were missing from Store 8's inventory. (Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts ¶¶ 15–16, D.E. 27.) She promptly called McBride to report her findings,[2] and he came to the store to investigate. (*Id.*) After reviewing the inventory and sales reports, McBride called Johnson and asked that he meet him at the store to discuss discrepancies contained in the daily reports and inventory counts Plaintiff prepared. (*Id.* ¶ 16.) When Johnson arrived, McBride asked him to demonstrate a cigarette count, and Plaintiff did so. (*Id.* ¶ 20.)[3] McBride then showed Johnson that the number from some of his previous cigarette counts at Store 8 did not add up properly. (*Id.* ¶ 21.) After a conversation between the two, the content of which the parties disagree about,[4] McBride fired Plaintiff. (*Id.*

---

[2] According to McBride's deposition, by March 27, 2013, he was working as a "supervisor" for Defendant, rather than as the manager of the Maverick Quick Shop. (*See* McBride Dep. at 45, D.E. 27-3.) Although Store 8 was one of Turnbow's stores, McBride testified that he was filling in for Turnbow, who was off work on March 27, 2013. (*See id.* at 46.)

[3] The parties dispute whether or not Johnson's demonstrated cigarette count was correct. Defendant claims that Johnson completed the count "correctly without assistance." (Def.'s Statement of Undisputed Material Facts ¶ 20, D.E. 25.) Plaintiff, on the other hand, argues that he performed the count the same way he previously had—presumably incorrectly—and that McBride never indicated whether it was correct. (Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts ¶¶ 20–21, D.E. 27.) For the reasons discussed below, however, this dispute does not concern a material fact.

[4] Cox Oil claims that Johnson admitted he falsified cigarette counts. (Def.'s Statement of Undisputed Material Facts ¶ 22, D.E. 25.) Plaintiff states, however, that he initially admitted that he "fudg[ed]" the numbers but later said that he "didn't know what that meant" and that he had not falsified the reports. (Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts ¶ 22, D.E. 27.) As described more fully below, this dispute does not go to a

¶ 26.) Defendant's stated reason for Johnson's termination was that he falsified company documents related to the cigarette counts. (*Id.* ¶ 26.) Under Cox Oil's discipline policy, certain conduct is considered "so serious that [it] will result in immediate termination of the first offense," and "[f]alsifying [c]ompany records or reports including[] personnel, physical exams, employment records, . . . etc." falls into this category. (*Id.* ¶ 25 (quoting Ex. 1 to McBride Decl.; D.E. 25-1).)

## II. Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "A dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Smith v. Perkins Bd. of Educ.*, 708 F.3d 821, 825 (6th Cir. 2013) (quoting *Ford v. Gen. Motors Corp.,* 305 F.3d 545, 551 (6th Cir. 2002)). A court's function at the summary judgment stage is not to "weigh the evidence and determine the truth of the matter"; rather, it is "to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *see Bobo v. United Parcel Serv., Inc.*, 665 F.3d 741, 748 (6th Cir. 2012) ("Credibility determinations . . . and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.")

The moving party "has the initial burden of showing the absence of a genuine dispute as to a material fact." *Automated Solutions Corp. v. Paragon Data Sys., Inc.*, 756 F.3d 504, 520 (6th Cir. 2014) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the motion is

---

material fact because Plaintiff has failed to establish a prima facie case of discrimination or come forth with evidence that his race was a motivating factor in his termination.

properly supported, "the opposing party must go beyond the contents of its pleadings to set forth specific facts that indicate the existence of an issue to be litigated." *Slusher v. Carson*, 540 F.3d 449, 453 (6th Cir. 2008) (citation omitted). A court must grant summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322–23; *see In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001). Because "only admissible evidence may be considered by a trial court in ruling on a motion for summary judgment," *Shipp v. United States*, 212 F. App'x 393, 401–02 (6th Cir. 2006) (quoting *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994)), "[a] party opposing a motion for summary judgment cannot use hearsay or other inadmissible evidence to create a genuine issue of material fact," *Sperle v. Michigan Dep't of Corr.*, 297 F.3d 483, 495 (6th Cir. 2002) (citing *Weberg v. Franks*, 229 F.3d 514, 526 n.13 (6th Cir. 2000)). Finally, although a court does not weigh the evidence at this stage, it "must view all evidence and draw any reasonable inferences therefrom in favor of the nonmoving party." *Demyanovich v. Cadon Plating and Coatings, L.L.C.*, 747 F.3d 419, 426 (6th Cir. 2014) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)).

### III.     Analysis

*A.     Title VII and the THRA*

Plaintiff brings both Title VII and THRA claims. Under Title VII, it is unlawful for any employer to "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1). Likewise, the THRA prohibits employers from "[f]ail[ing] or refus[ing]

to hire or discharg[ing] any person or otherwise . . . discriminat[ing] against an individual with respect to compensation, terms, conditions or privileges of employment because of such individual's race, creed, color, religion, sex, age or national origin . . . ." Tenn. Code Ann. § 4-21-401(a)(1). With certain exceptions inapplicable to this case, the analysis for claims arising under the THRA and Title VII is the same. *See Saulsberry v. Fed. Exp. Corp.*, 552 F. App'x 424, 430 (6th Cir. 2014) (citing *Bobo v. United Parcel Serv., Inc.*, 665 F.3d 741, 757 (6th Cir. 2012)). Because Plaintiff has not argued that a different standard applies to his claim under the THRA than to his claim under Title VII, and as the two arise out of the same facts, the Court will address them together. *See Sybrandt v. Home Depot, U.S.A., Inc.*, 560 F.3d 553, 557 (6th Cir. 2009).

"Allegations of discriminatory conduct . . . fall into one of two categories: single-motive claims, 'where an illegitimate reason motivated an employment decision,' or mixed-motive claims, 'where both legitimate and illegitimate reasons motivated the employer's decision.'" *Spees v. James Marine, Inc.*, 617 F.3d 380, 389–90 (6th Cir. 2010) (quoting *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 396 (6th Cir. 2008)). In his response, Johnson argues that he has a valid claim under either theory. The Court will, therefore, address them in turn.

### B. *Single-Motive Claim*

#### 1. Direct Evidence

To survive summary judgment on a single-motive race discrimination claim, a plaintiff "must present either direct or circumstantial evidence that [the employer's] actions were motivated, in whole or in part, by racial animus." *Reed*, 556 F. App'x at 428. "[D]irect evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Sami v. Detroit Med. Ctr.*, 591 F. App'x

419, 424 (6th Cir. 2014) (alteration in original) (quoting *Jacklyn v. Schering–Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999)). To qualify, the evidence must do more than show "that the plaintiff's employer was predisposed to discriminate"; it must also establish "that the employer acted on that predisposition." *Grubb v. YSK Corp.*, 401 F. App'x 104, 109 (6th Cir. 2010) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004)). "[U]nless a[n improper] motivation is explicitly expressed," direct evidence of discrimination does not exist. *Id.* (second alteration in original) (quoting *Amini v. Oberlin Coll.*, 440 F.3d 350, 359 (6th Cir. 2006)).

Defendant argues that "Johnson cannot present any direct evidence of discrimination whatsoever . . . ." (D.E. 24-1 at 6.) Though Plaintiff does not explicitly concede that he lacks direct evidence, he fails to point to any such evidence. In his deposition, however, Johnson offered the following testimony:

> Q. Did Mr. McBride ever make a racially discriminatory comment to you?
>
> A. No, not to me. There's just one that stood out, though. ["]I like you and your wife outside of the company,["] every day, every day.
>
> Q. Say that again. I like you—
>
> A. Outside—you and your wife outside of this company.
>
> Q. And that's what [McBride] would say?
>
> A. Yes, sir.

(Pl.'s Dep. 68, D.E. 25-2.) These statements neither show that McBride was predisposed to discriminate nor establish that he acted with any improper motivation in terminating Johnson. Though they might have seemed notable to Plaintiff, they do not constitute direct evidence of discrimination.

Johnson also offered testimony concerning another former employee's statements:

7

| | | |
|---|---|---|
| Q. | | Other than what you told me here, is there any other facts [sic] that you have to support the allegation that the complaint discriminated against you because of your race in terminating you? |
| A. | | No. |
| Q. | | You have told it all? |
| A. | | Just by what somebody else told me. That's the only thing I got [sic]. |
| Q. | | By somebody else told you what? |
| A. | | Well, this is another girl[. S]he told me what [McBride] said about blacks. |

. . . .

| | | |
|---|---|---|
| A. | | She told me that he—he said several gestures about blacks. |
| Q. | | He said several gestures? |
| A. | | Yeah. |
| Q. | | And what does that mean? |
| A. | | Look at all your black employees that has [sic] white friends, all your white employees that has [sic]—employees that have black friends, they steal cigarettes. They steal. |

. . . .

| | | |
|---|---|---|
| A. | | She told me that. |
| Q. | | That what? |
| A. | | What [McBride] said. |

(*Id.* at 75–76.) While these remarks—if actually made—would certainly be nothing to condone, they do not constitute direct evidence of racial discrimination. Nothing in the statements connects any discriminatory predisposition to Plaintiff's termination or any other employment action. Moreover, because Johnson was reporting what another individual told him, the statements constitute inadmissible hearsay. *See* Fed. R. Evid. 801(c). They cannot, therefore, be

8

used to overcome a motion for summary judgment. *See Sperle*, 297 F.3d at 495; *Carver v. Nashville Wire Products*, No. 3-13-1380, 2015 WL 419880, at *3 (M.D. Tenn. Jan. 30, 2015). Accordingly, Plaintiff has no direct evidence to support his claim, and he must therefore rely on circumstantial evidence.

    2.    Circumstantial Evidence

When an employment discrimination claim is based solely on circumstantial evidence, the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981), applies. *Sarvak v. Urban Retail Properties, LLC*, 524 F. App'x 229, 233 (6th Cir. 2013). Under this framework, Plaintiff must first establish a prima facie case of race discrimination. *Spokojny v. Hampton*, 589 F. App'x 774, 778 (6th Cir. 2014). If he does so, the burden then shifts to Defendant to "offer[] a legitimate, non-discriminatory reason" for the adverse employment action. *Id.* If Cox Oil identifies such a reason, the burden shifts back to Johnson "to prove that this reason constituted mere pretext for discrimination." *Id.*

To make out a prima facie case, Johnson must "present evidence that: (1) he was a member of a protected class; (2) that he suffered an adverse employment action; (3) that he was professionally qualified for the position he held at the time of the action; and (4) that he was either replaced by a person from outside the protected class or was treated differently from similarly situated employees outside the protected class." *White v. Duke Energy-Kentucky, Inc.*, __ F. App'x ___, 2015 WL 859554, at *3 (6th Cir. 2015) (citing *Clayton v. Meijer, Inc.*, 281 F.3d 605, 607, 610 (6th Cir. 2002)). Cox Oil does not dispute that Plaintiff is a member of a protected class or that his termination qualifies as an adverse employment action. It does argue,

however, that he was not qualified for his job when he was fired and that he was treated the same as other similarly situated employees.

a. Qualification

"At the prima facie stage, a court should focus on a plaintiff's *objective* qualifications to determine whether he or she is qualified for the relevant job." *Brooks v. Davey Tree Expert Co.*, 478 F. App'x 934, 941 (6th Cir. 2012) (emphasis in original) (quoting *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 575 (6th Cir. 2003)). Plaintiff can satisfy his prima facie burden "by presenting 'credible evidence that his . . . qualifications are at least equivalent to the minimum objective criteria required for employment in the relevant field.'" *Id.* (quoting *Wexler*, 317 F.3d at 576). While "the specific qualifications will vary depending on the job in question, . . . criteria such as the plaintiff's education, experience in the relevant industry, and demonstrated possession of the required general skills" should shape the inquiry. *Id.*

Cox Oil argues that Johnson is not qualified for his position because his "cigarette counts were inaccurate and reflected variances of up to [twenty] packs of cigarettes per day, resulting in a total variance of [eighty] packs . . . ." (D.E. 24-1 at 7.) According to Defendant, Plaintiff "either willfully falsified Cox Oil company documents for the purpose of avoiding trouble and extra work, or he was grossly incompetent"; therefore, "he did not satisfactorily perform the essential functions of his job." (*Id.*) This line of reasoning, however, lacks merit. As an element of the prima facie case, qualification only concerns a plaintiff's employment record "*prior to* the onset of the events that the employer cites as its reason for the termination . . ." *Benjamin v. Brachman*, 246 F. App'x 905, 921 (6th Cir. 2007) (emphasis in original) (quoting *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 662–63 (6th Cir. 2000)). The events Cox Oil relies on

are the same events that led to Johnson's termination, so they will not support its argument that Johnson was unqualified.

The parties do not dispute that Plaintiff worked for Defendant for nearly five years and that he served as an assistant manager for all but the first seven months of his employment. McBride also stated that Johnson generally received good performance evaluations during his tenure with the company. (*See* McBride Dep. 40, D.E. 27-3.) This information is enough to at least create an issue of fact as to his qualification. *See Geiger v. Tower Auto.*, 579 F.3d 614, 624 (6th Cir. 2009) (noting that a plaintiff was qualified for a position when he had previously served the position, had extensive experience, and had received generally positive reviews from his employer); *see also Hale v. ABF Freight Sys., Inc.*, 503 F. App'x 323, 333 (6th Cir. 2012) (same).

      b.      Replacement or Discriminatory Treatment

To establish the final element of his prima facie case, Johnson must show "that he was either replaced by a person from outside the protected class or was treated differently from similarly situated employees outside the protected class." *White*, 2015 WL 859554, at *3. Because Plaintiff does not allege that he was replaced by someone outside the protected class, he must come forth with evidence that he was treated worse than comparable employees. Though "plaintiffs are not required to demonstrate an exact correlation between [themselves] and others similarly situated," they must establish "that [they] and [their] proposed comparators were similar in all relevant respects." *Lynch v. ITT Educ. Servs., Inc.*, 571 F. App'x 440, 452 (6th Cir. 2014) (alterations in original) (quoting *Bobo*, 665 F.3d at 751) (internal quotation marks omitted). "In the disciplinary context, . . . the plaintiff and [his] proposed comparator must have

11

engaged in acts of comparable seriousness." *Martinez v. Cracker Barrel Old Country Store, Inc.*, 703 F.3d 911, 917 (6th Cir. 2013) (citation omitted) (internal quotation marks omitted).

Johnson has not provided appropriate evidence that he was treated differently than similarly situated employees because he has not proposed *any* comparators, similar or otherwise. To support the fourth element of his prima facie case, Plaintiff argues that he "was terminated for violating a policy he did not violate by an individual who had treated him differently than other employees." (D.E. 26 at 10.) He contends that McBride had previously written him up "on a daily basis" during his time at the Maverick Quick Shop, that this caused Johnson to "g[i]ve up on his aspirations of learning from . . . McBride," and that he had requested training on how to properly perform the cigarette counts but was not provided any instruction. (*Id.*)[5] Although Plaintiff insists that he was "treated . . . differently than other employees," (*id.*), he has not come forth with any evidence to support that assertion. Nowhere in his brief does Johnson identify any employee who was treated differently than he was, either by being retained or receiving further training under similar circumstances. Though "[d]istrict courts need not independently comb through the record and establish that it is bereft of a genuine issue of material fact before granting summary judgment," *Emerson v. Novartis Pharm. Corp.*, 446 F. App'x 733, 734 (6th Cir. 2011) (citation omitted), the Court notes that Plaintiff stated in his deposition that there were "two Caucasians that was [sic] falsifying documents, and they didn't get fired." (Pl.'s Dep. 60, D.E. 27-2.) This testimony was only included in the portion of the deposition transcript submitted by Johnson through counsel. The record of this line of questioning ends immediately after Plaintiff identifies the two individuals and states that one of them was a deli manager. (*See*

---

[5] Elsewhere, Plaintiff also asserts that McBride "made . . . [him] come in . . . at 6:00 [AM] the morning after he had worked until closing to do a morning report, which was not required by other managers." (D.E. 26 at 2.) Johnson does not point to any individual who was treated differently. In his deposition, he merely states that other managers he worked for had never made him come in early after closing the previous night. *See* (Pl.'s Dep. 46, D.E. 27-2) ("Any other manager, I wouldn't have to do that. And I done work [sic] for three different managers.").

12

*id.*) Presumably, counsel did not rely on these individuals as comparators because they did not qualify as such. Likewise, no evidence in the record before this Court shows that these employees were similarly situated to Johnson.

While the "burden at the [prima facie] stage is not onerous, [Plaintiff] must provide some evidence supporting all four elements of h[is] case." *Wierengo v. Akal Sec., Inc.*, 580 F. App'x 364, 371 (6th Cir. 2014). As noted, Johnson does not claim that a person outside the protected class replaced him. Further, even if supervisors at Cox Oil "may have harbored animus against him," he has not established that he was treated worse than other employees, and he has "failed to present evidence that [any] animus was linked to his [race]." *Tilley v. Kalamazoo Cnty. Rd. Comm'n*, 777 F.3d 303, 309 (6th Cir. 2015). Accordingly, he has not presented evidence sufficient to prove the fourth element of a prima facie race discrimination case. Summary judgment is therefore proper on his single motive claim, and "th[e] Court need not reach the further questions of pretext involved in the *McDonnell Douglas* balancing framework." *Id.* at 309 n.3 (quoting *Martinez*, 703 F.3d at 917); *Colvin v. Veterans Admin. Med. Ctr.*, 390 F. App'x 454, 460 (6th Cir. 2010).

C.  *Mixed-Motive Claim*

Alternatively, a plaintiff may bring a "mixed-motive" claim by "demonstrat[ing] that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m). As a threshold issue, a "[p]laintiff[] must give proper notice" to proceed under a mixed-motive theory. *Spees v. James Marine, Inc.*, 617 F.3d 380, 390 (6th Cir. 2010) (citing *Hashem-Younes v. Danou Enters. Inc.*, 311 F. App'x 777, 779 (6th Cir. 2009)). Johnson's complaint states that his "race was *a* motivating factor in Defendant's treatment of him," (Compl. ¶ 26, D.E. 1) (emphasis added), and

he identified a mixed-motive claim in his summary judgement briefing. Generally, this is enough to constitute proper notice, *see Spees*, 617 F.3d at 390–91, and Cox Oil does not argue to the contrary.

The *McDonnell Douglas* framework does not apply to mixed-motive claims, which require a less stringent showing to overcome summary judgment. *See Bartlett v. Gates*, 421 F. App'x 485, 488 n.1 (6th Cir. 2010) (citing *White v. Baxter Healthcare Corp.*, 533 F.3d 381 (6th Cir. 2008)); *Spees*, 617 F.3d at 390. As a trade-off, plaintiffs who prevail on a mixed-motive claim are "entitled only to declaratory relief, limited injunctive relief, and attorney fees and costs where the employer demonstrates that it would have taken the same employment action in the absence of an impermissible motivating factor." *Spees*, 617 F.3d at 390 (citing 42 U.S.C. § 2000e–5(g)(2)(B)). To avoid summary judgment on a mixed-motive claim, a plaintiff "need only produce evidence sufficient to convince a jury that: (1) the defendant took an adverse employment action against the plaintiff; and (2) race, color, religion, sex, or national origin was *a* motivating factor for the defendant's adverse employment action." *Id.* (emphasis in original) (quoting *White*, 533 F.3d at 400). For a mixed-motive race discrimination claim, however, summary judgment is proper where a plaintiff "has presented no evidence that race . . . played a role in the [employer]'s decision . . . ." *Lai Ming Chui v. Donahoe*, 580 F. App'x 430, 439 (6th Cir. 2014). Moreover, a plaintiff "cannot show that discrimination was a motivating factor by using a combination of remote, conclusory, isolated, unrelated, and ambiguous statements." *Spokojny v. Hampton*, 589 F. App'x 774, 781 (6th Cir. 2014).

Here, Johnson has not come forth with evidence from which a reasonable jury could conclude that race was a motivating factor in his termination. To support his mixed-motive claim, Plaintiff argues that he was purportedly terminated for falsifying company documents

14

shortly after he requested but did not receive training on how to perform a proper cigarette count. He contends that he was fired before a complete investigation of the incident occurred—an investigation that would have shown that no cigarettes were actually missing and that "Johnson had only made a mistake," instead of falsifying documents. (D.E. 26 at 8.) Further, he points out that McBride, who terminated him, had previously required him to come in early to compile reports after staying late the previous night to close the Maverick Quick Shop, which other managers had never required him to do, and McBride had also written him up every day.

While this evidence, at most, may indicate that individuals at Cox Oil "do[] not particularly like Plaintiff," it does not support Johnson's "conclusory allegations of racial animus." *Arendale v. City of Memphis*, 519 F.3d 587, 606 (6th Cir. 2008); *see also Evans v. Walgreen Co.*, 813 F. Supp. 2d 897, 923 (W.D. Tenn. 2011), *aff'd*, 559 F. App'x 508 (6th Cir. 2014). As previously discussed, Plaintiff does not point to any employee, regardless of race, who was treated differently with regard to Defendant's policy on falsifying documents. Likewise, he does not identify any individual who received more or different training than he did. Further, even accepting *arguendo* Johnson's generalized allegations that other employees received different treatment, he points to no evidence showing a connection between those differences and race.[6]

At most, then, Plaintiff argues that his actions constituted a "mistake" rather than a violation of Defendant's policies. Ultimately, he insists that McBride should have "wait[ed] for the investigation to show that . . . Johnson had only made a mistake," rather than falsify documents, before firing him. (D.E. 26 at 8.) But when a plaintiff's "allegations regarding

---

[6] The Court notes, however, that Plaintiff's generalized and conclusory statements will not overcome a properly supported summary judgment motion on a mixed-motive claim. *See Arendale v. City of Memphis*, 519 F.3d 587, 605 (6th Cir. 2008)*; Lukudu v. JBS USA, LLC*, No. 3:12-CV-00704-TBR, 2014 WL 1048516, at *6 (W.D. Ky. Mar. 14, 2014), *appeal dismissed* (May 12, 2014).

15

discrimination go to show that he did not violate the [relevant] policy rather than that race was a motive in his termination," however, he does not meet even the "low burden" to avoid summary judgment on a mixed-motive claim. *Graham v. Best Buy Stores, L.P.*, 298 F. App'x 487, 495 (6th Cir. 2008).[7] Thus, Johnson's arguments miss the mark. Presented with this record as a whole, no jury could reasonably draw the inference that race was a motivating factor in Plaintiff's termination; therefore, summary judgment is proper. *See Tibbs v. Calvary United Methodist Church*, 505 F. App'x 508, 516 (6th Cir. 2012) (affirming a grant of summary judgment on a mixed motive claim where the record did "not allow a reasonable jury to conclude that [an employer] considered [an employee's] race a motivating factor in its decision to discharge her").

## IV. Conclusion

Because Johnson has failed to come forth with sufficient evidence to support his claims under either a single-motive or mixed-motive theory, Defendant's motion for summary judgment is GRANTED.

IT IS SO ORDERED this 10th day of June 2015.

s/ J. DANIEL BREEN
CHIEF UNITED STATES DISTRICT JUDGE

---

[7] The Sixth Circuit has held that establishing a prima facie case under *McDonnell Douglas* may provide support for a plaintiff's mixed-motive claim. *See White*, 533 F.3d at 401. Meeting *McDonnell Douglas*'s prima facie burden is neither necessary nor sufficient for a mixed-motive claim to survive summary judgment. *Graham*, 298 F. App'x at 495 (affirming the grant of summary judgment on a mixed-motive claim where the plaintiff established a prima facie case); *White*, 533 F.3d at 401 ("[C]ompliance with the *McDonnell Douglas/Burdine* shifting burdens of production is *not* required in order to demonstrate that the defendant's adverse employment action was motivated in part by a consideration of [impermissible factors]."). Because Johnson has not established a prima facie case, however, he does not benefit from the additional support it would provide to his mixed-motive claim.